UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERMAINE TUCKER ) | CIVIL ACTION NO. |
|     Plaintiff ) | |
| ) | |
| v. ) | TRIAL BY JURY DEMANDED |
| ) | |
| EXECUTIVE AUTO SALES OF CT LLC ) | MAY 26, 2022 |
|     Defendant ) | |

## **COMPLAINT**

### I. INTRODUCTION

1. This is an action brought by a consumer against an automobile dealership for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-770 *et seq.,* and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq*. in connection with the sale of a motor vehicle.

### II. PARTIES

2. The plaintiff, Jermaine Tucker ("Plaintiff"), is a consumer residing in Middletown, Connecticut.

3. The defendant, Executive Auto Sales of CT, LLC d/b/a Shoreline Motorsports ("Executive Auto"), is a Connecticut limited liability company and is licensed to operate an automobile dealership in Waterbury, Connecticut.

### III. JURISDICTION

4. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640, and Fed. R. Civ. P. 18(a).

5. This Court has jurisdiction over Executive Auto because it is located in Connecticut and is organized under Connecticut law.

6. Venue in this Court is proper because all of the parties are located in this state and the transaction occurred in this state.

## IV. FACTUAL ALLEGATIONS

7. In January 2022, Plaintiff located a 2007 Lexus GS (the "Vehicle") that Executive Auto had advertised on Facebook marketplace.

8. The Vehicle was advertised for a cash price of $6,900 (the "Advertised Price").

9. Plaintiff contacted Executive Auto and spoke with Ali Kazme ("Kazme"), who stated that he was the owner of Executive Auto, regarding his interest in purchasing the Vehicle.

10. Unbeknownst to Plaintiff, Executive Auto had acquired the Vehicle at an auction. This was a relevant consideration for Plaintiff, because he considers auctioned cars to be inferior to vehicles obtained by dealerships as trade-ins or through other means.

11. Although the Vehicle was advertised for a cash price of $6,900, Plaintiff and Kazme negotiated a sales price of $6,500 (the "Negotiated Price").

12. Kazme told Plaintiff that he had been approved for financing the Vehicle through Western Funding, Inc. ("Western Funding"). As part of the financing terms, Plaintiff was required to make a down payment of $4,500 plus monthly payments of $293.78.

13. Kazme prepared contract documents for the sale of the Vehicle, including a purchase order (the "Order") and retail installment contract (the "Contract") for the financed purchase of the Vehicle.

14. The Order included a vehicle history disclosure that included a box to be checked if the Vehicle had been sold at an auction and, although the Vehicle was an "auction" vehicle, Executive Auto failed to check the box.

15. The Order utilized a purchase price of $8,900, an amount that was $2,000 more than the Advertised Price and $2,500 more than the Negotiated Price.

16. The Order also included a dealer conveyance fee of $599 that was intended to compensate Executive Auto for processing the paperwork and registration for the Vehicle.

17. Executive Auto did not disclose that it charged a conveyance fee either in its Facebook Marketplace advertisement, and Kazme failed to disclose that Executive Auto charged a conveyance fee at the time that he and Plaintiff negotiated the cash price.

18. The first time that the conveyance fee was disclosed was when it was included in the Order and other contract documents presented to Plaintiff for execution.

19. The Order also included a charge of $187 for state charges to register the Vehicle, including the charges for license plates and title.

20. Plaintiff and Executive Auto executed the contract documents, including the Contract, on January 18, 2022.

21. Plaintiff paid the down payment of $4,500 as required by the Contract.

22. Executive Auto did not provide Plaintiff with a copy of the Contract in a form he could keep as required by TILA.

23. Kazme told Plaintiff that the Vehicle was not ready for delivery but that Executive Auto would deliver it to Plaintiff's home that evening.

24. Executive Auto did not furnish the title for the Vehicle to Plaintiff at the time that he executed the Order as required by Conn. Gen. Stat. § 14-62(d).

25. On the evening of January 18, 2022, Kazme brought the Vehicle to Plaintiff's home and left it in his driveway, but it did not provide Plaintiff with any keys, key fobs, or license plates, and the Vehicle was not registered.

26. For reasons unknown to Plaintiff, Western Funding did not accept assignment of the Contract.

27. A day or two after the purchase, Plaintiff was contacted by a representative of Executive Auto who identified himself as "Syed", who informed him that an additional payment of $2,000 was necessary to complete the sale of the Vehicle and that, by making this payment, Plaintiff would acquire full ownership of the Vehicle without any liens or debt.

28. Plaintiff requested a refund of his down payment of $4,500, but Syed refused, stating that the down payment was non-refundable.

29. In order to avoid forfeiting his down payment, the Plaintiff agreed to pay the additional $2,000 that Syed presented to him.

30. Plaintiff paid $2,000 to Syed on January 20, 2022, and received a paper print-out of a temporary Vermont license and the keys.

31. It is unknown why Executive Auto furnished a temporary Vermont license, because there was no agreement that the Vehicle would be registered in Vermont, Plaintiff is and was a Connecticut resident, and he intended to keep and use the Vehicle in this state.

32. Plaintiff was unable to legally drive the Vehicle utilizing this registration, and Executive Auto never furnished Plaintiff with a permanent registration from Vermont, Connecticut, or elsewhere.

33. On April 5, 2022, Plaintiff, by his attorney, notified Executive Auto that he elected to revoke acceptance of the Vehicle or, alternatively, elected to rescind the transaction.

34. Executive Auto has been given the opportunity to retrieve the Vehicle, but has refused to do so.

35. Executive Auto has failed and refused to refund to Plaintiff the $6,500 that he paid for the Vehicle.

36. As a result, the Vehicle remains at Plaintiff's residence, unregistered and undrivable.

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT

37. Executive Auto is a "creditor" within the meaning of TILA because it extended financing in the sale of motor vehicles to consumers at least 25 times in the calendar year preceding the sale to Plaintiff.

38. Executive Auto violated TILA by failing to provide Plaintiff with any of the disclosures required by 15 U.S.C. § 1638 in a form that he could keep.

5

39. Upon information and belief, Executive Auto charged Plaintiff more than the Advertised Price and the Negotiated Price because it had intended to assign the Contract to Western Funding, who charged it a significant "discount fee" for assignments or because it had made an offer to accept assignment of the Contract for an amount that was significantly less than the amount financed.

40. Consequently, the increased price was imposed as a condition of financing, and the price would not have increased in a comparable cash transaction to purchase the Vehicle.

41. Executive Auto violated TILA by improperly including the increased cost of the Vehicle as part of the amount financed and not including it in the finance charge, resulting in an inaccurate itemization of the amount financed.

42. Additionally, the finance charge was materially understated and the true annual percentage rate of interest was materially in excess of the disclosed rate of 18.90%.

43. Executive Auto is liable to Plaintiff for actual damages, statutory damages of double the finance charge (which is disclosed in the Contract as $1,206.99), capped at $2,000, plus a reasonable attorney's fee and costs.

**B. RETAIL INSTALLMENT SALES FINANCING ACT**

44. Executive Auto's violations of TILA also constituted violations of RISFA, which incorporates the requirements of TILA at Conn. Gen. Stat. § 36a-771(b).

45. Executive Auto further violated RISFA by its failure to provide Plaintiff with a fully executed copy of the Contract at the time that he executed it as required at Conn. Gen. Stat. § 36a-771(a).

46. Executive Auto also violated RISFA, Conn. Gen. Stat. § 36a-772(a), because the true annual percentage is in excess of 19% as a result of its failure to include the increased sale price as a finance charge.

47. Plaintiff restored Executive Auto to its position prior to the making of the Contract by offering to permit it to retrieve the Vehicle.

48. Plaintiff is entitled to a rescission of the transaction and a return of all payments made. See *Barco Auto Leasing v. House*, 202 Conn. 106 (1987).

## C.  REVOCATION OF ACCEPTANCE

49. Plaintiff asserts this claim for revocation of acceptance as an alternative to his rescission claim.

50. Plaintiff justifiably revoked his acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 due to Executive Auto's breach of warranty of title and by its material misrepresentations and fraud, specifically, Executive Auto falsely represented to Plaintiff that he would purchase the Vehicle for a cash price of $6,500, it falsely represented that it would register the Vehicle to Plaintiff, it falsely told Plaintiff that he was approved for financing, and it falsely told him that he could acquire full ownership of the Vehicle by paying an additional $2,000.

51. Plaintiff's revocation of acceptance was also appropriate because of Executive Auto's breach of warranty of title.

52. Plaintiff is entitled to a refund of the $6,500 that was paid by Plaintiff.

53. Plaintiff is entitled to a security interest in the Vehicle to secure his claim pursuant to Conn. Gen. Stat. § 42a-2-711.

**D. CONNECTICUT UNFAIR TRADE PRACTICES ACT**

54. Executive Auto has engaged in unfair acts and practices in trade or commerce in violation of Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction, as follows:

   a. Its violations of TILA and RISFA;

   b. It charged Plaintiff a dealer conveyance fee without having disclosed it in the Vehicle's advertisements as required by Conn. Gen. Stat. § 14-62a and without having disclosed it prior to the presentation of contract documents in violation of Conn. Gen. Stat. § 14-62(b);

   c. It sold the Vehicle for more than the Advertised Price and for more than the Negotiated Price, a *per se* violation of CUTPA under Conn. Agency Reg. § 42-110b-28(b)(1);

   d. Its false statements regarding the Vehicle's history and condition by failing to disclose on the Order that the Vehicle had been acquired at an auction;

   e. It failed to assign the title of the Vehicle at the time Plaintiff entered into the transaction, in violation of Conn. Gen. Stat. § 14-62(d);

   f. It failed to register the car despite charging Plaintiff a dealer conveyance fee of $595 and a registration fee;

   g. Its refusal to refund the down payment upon demand after informing Plaintiff that Western Funding had not accepted assignment of the Contract and that Plaintiff was required to pay additional cash in order to retain the Vehicle;

    h. It sold the Vehicle to Plaintiff without financing in place, a violation of Conn. Gen. Stat. § 14-62(h); and

    i. It falsely and deceptively told Plaintiff that required that Plaintiff pay an additional $2,000, contrary to the original agreement, and then failed to convey title after he had paid that $2,000.

55. Executive Auto's conduct, as aforedescribed, was deceptive and unfair and in violation of CUTPA, and it caused Plaintiff to suffer ascertainable losses and damages in that he paid more for the Vehicle, he lost his down payment, he lost use of the Vehicle.

56. Executive Auto is liable to Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

WHEREFORE, Plaintiff claims actual damages, TILA statutory damages of $2,000, punitive damages, attorney's fees and costs, an order stating that Plaintiff validly rescinded and/or revoked acceptance of the Vehicle, an order permitting Plaintiff to sell the Vehicle in satisfaction of his claim, and any other relief deemed just and equitable by this Court.

PLAINTIFF, JERMAINE TUCKER

By: _/s/ Daniel S. Blinn_
Daniel S. Blinn (ct02188)
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax (860) 571-7457