UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERMAINE TUCKER,<br>    *Plaintiff*,<br><br>    v.<br><br>EXECUTIVE AUTO SALES OF CT LLC,<br>ET AL.,<br>    *Defendants.* | No. 3:22-cv-00709 (VAB) |

**RULING AND ORDER ON MOTION FOR DEFAULT JUDGMENT**

Jermaine Tucker ("Plaintiff") has sued Executive Auto Sales of CT LLC ("Executive Auto") and Ali Kazme (collectively, "Defendants"), alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-770 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq. Am. Compl., ECF No. 14 ("Am. Compl.").

Defendants have not appeared in this action. On October 3, 2022, the Clerk of Court granted Mr. Tucker's motion for default entry against Executive Auto. Order, ECF No. 9; Mot. for Default Entry, ECF No. 8. On February 13, 2023, the Clerk of Court granted Mr. Tucker's motion for default entry against Mr. Kazme. Order, ECF No. 18; Mot. for Default Entry, ECF No. 17.

Mr. Tucker now moves for default judgment against Defendants. Mot. for Default J., ECF No. 19 ("Mot.").

For the following reasons, the motion for default judgment is **GRANTED**, and the Court awards Mr. Tucker damages against Executive Auto in the amount of **$20,750**, including $2,000 in statutory damages and $18,750 in attorney's fees under TILA.

The Court further awards Mr. Tucker damages against Executive Auto and Ali Kazme in the amount of **$25,380** under CUTPA, including $12,690 in compensatory damages and $12,690 in punitive damages.

Consistent with this Order, Mr. Tucker's acceptance of the vehicle is revoked, and he may dispose of the vehicle and apply the proceeds in partial satisfaction of the judgment.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  **Factual Allegations**[1]

In January of 2022, Mr. Tucker found a 2007 Lexus GS (the "vehicle") advertised by Executive Auto on Facebook Marketplace for $6,900. Am. Compl. ¶¶ 9–10.

Mr. Tucker then spoke with Mr. Kazme, who allegedly identified himself as the owner of Executive Auto, and Mr. Kazme allegedly told Mr. Tucker that he was "100% guaranteed approval" for financing if social security income was Mr. Tucker's only source of income. *Id.* ¶¶ 11–12.

At some point, Mr. Tucker negotiated the cash price of the vehicle from $6,900 to $6,500. *Id.* ¶ 14.

Mr. Kazme informed Mr. Tucker that he had been approved for financing through Western Funding, Inc. with a required down payment of $4,500 and monthly payments of $293.79, which could be reduced to approximately $240 after six months of on-time payment. *Id.* ¶¶ 15–16. Mr. Kazme also allegedly informed Mr. Tucker that once financing was approved, Executive Auto would issue new Connecticut plates for the vehicle. *Id.* ¶ 18.

---

[1] For the purposes of a default judgment motion, the Court accepts all facts alleged in the Complaint as true. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted."); *see also Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 300 (D. Conn. 2012) ("Upon entry of a default, the court accepts as true all of the factual allegations of the complaint, except those relating to damages." (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992))).

Subsequently, Mr. Kazme prepared the purchase order and the retail installment contract for financing the vehicle. *Id.* ¶ 19. Among other costs, the purchase order listed the purchase price as $8,900, a dealer conveyance fee of $599, and a $178 fee for registration, license plates, and the title. *Id.* ¶¶ 21–22, 25.

On January 18, 2022, the parties executed the purchase order and the retail installment contract, and Mr. Tucker paid the $4,500 down payment. *Id.* ¶¶ 26–27.

Also on January 18, 2022, Mr. Kazme allegedly delivered the vehicle, unregistered, to Mr. Tucker's home without any keys, key fobs, or license plates. *Id.* ¶ 31.

At some point, Mr. Tucker learned that Western Funding did not accept assignment of the retail installment contract. *Id.* ¶ 32. Approximately two days after Mr. Tucker purchased the vehicle, he was contacted by an Executive Auto representative who informed Mr. Tucker that an additional $2,000 payment was necessary to complete the sale of his vehicle. *Id.* ¶ 33. At this time, Mr. Tucker requested a refund of his down payment, however, the Executive Auto representative told Mr. Tucker that the down payment was non-refundable. *Id.* ¶ 34. Mr. Tucker, then paid the additional $2,000 and in return received the keys and a temporary Vermont license. *Id.* ¶ 36.

On April 5, 2022, through his attorney, Mr. Tucker notified Executive Auto that he elected to revoke acceptance of the vehicle or to rescind the transaction. *Id.* ¶ 39. Executive Auto allegedly has refused to retrieve the vehicle and refund the $6,500 that Mr. Tucker paid for the vehicle. *Id.* ¶¶ 40–41.

### B. Procedural History

On May 26, 2022, Mr. Tucker filed his Complaint in this action. Compl., ECF No. 1.

On September 13, 2022, Mr. Tucker filed a motion for default entry against Executive Auto. Mot. for Default Entry, ECF No. 8.

On October 3, 2022, the Court granted Mr. Tucker's motion for default entry. Order, ECF No. 9.

On November 18, 2022, Mr. Tucker filed an Amended Complaint, adding Ali Kazme as a defendant. Am. Compl.

On February 10, 2023, Mr. Tucker filed a motion for default entry against Mr. Kazme. Mot. for Default Entry, ECF No. 17.

On February 13, 2023, the Clerk of Court granted Mr. Tucker's motion for default entry. Order, ECF No. 18.

On March 15, 2023, Mr. Tucker filed a motion for default judgment against Defendants. Mot.; Mem. in Supp. of Mot. for Default J., ECF No. 19-1 ("Mem."); Aff. of Jermaine Tucker, ECF No. 21 ("Pl.'s Aff.").

On December 11, 2023, the Court conducting a hearing on Mr. Tucker's motion for default judgment. Minute Entry, ECF No. 25.

Also on December 11, 2023, Mr. Tucker filed a declaration in further support of its motion for default judgment. Blinn Decl., ECF No. 24 ("Blinn Decl.").

On December 26, 2023, Mr. Tucker filed an affidavit indicating that Mr. Kazme is not in the military. Military Aff., ECF No. 26.

II.     **STANDARD OF REVIEW**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must obtain an entry of default under Rule 55(a) by showing that the

defaulting party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505.

There are two ways to obtain a default judgment under Rule 55(b). "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not [a minor] or incompetent person." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). A sum certain amount is "a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases, Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *Green*, 420 F.3d at 104 (internal quotation marks omitted).

On a motion for default judgment under Rule 55(b)(2), a court must "accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether [the plaintiff's] allegations establish [the defaulting defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citations omitted); *see also Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (summary order) ("Conclusory allegations . . . are insufficient; a complaint must plead 'specific facts or circumstances' supporting them." (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996))).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). Thus, once a court establishes the defaulting defendant's liability, it must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). This inquiry requires both "determining the proper

5

rule for calculating damages" and "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.* A court "may conduct hearings" in order to evaluate the plaintiff's evidence and "determine the amount of damages." Fed. R. Civ. P. 55(b)(2); *see also Greyhound Exhibitgroup*, 973 F.2d at 158 (noting that damages that "are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount").

While all reasonable inferences from the evidence presented are drawn in the moving party's favor, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), "[t]he burden is on the plaintiff to establish its entitlement to recovery," *Bravado Int'l Grp. Merch. Serv., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158).

### III.  DISCUSSION

Mr. Tucker sets forth claims against Executive Auto under TILA, 15 U.S.C. §§ 1601 et seq., and RISFA, Conn. Gen. Stat. § 36a-770. Am. Compl. ¶¶ 43–59. Mr. Tucker also sets forth claims against Executive Auto and Mr. Kazme under CUTPA, Conn. Gen. Stat. §§ 42-110a. *Id.* ¶¶ 60–65. Mr. Tucker has complied with Rule 55(a) by obtaining an entry of default after showing that Defendants have "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).

The Court therefore will address each of Mr. Tucker's claims to determine if his allegations have established Defendants' liability as a matter of law.

#### A.  Truth in Lending Act Claim

TILA "provides for a private right of action for damages where a creditor fails to make disclosures required by the Act." *Rodriguez v. Auto Sales, Inc.*, 477 F. Supp. 2d 477, 479 (D.

Conn. 2007) (citing 15 U.S.C. §§ 1638, 1640). It "is a disclosure statute concerned with consumers' 'informed use of credit,' which 'results from an awareness of the cost thereof by consumers.'" *Morales v. Barberino Bros., Inc.*, No. 3:15-cv-00301 (CSH), 2016 WL 2626826, at *3 (D. Conn. May 5, 2016) (quoting 15 U.S.C. § 1601(c)).

"Since TILA is a remedial statute, it is interpreted strictly in favor of the consumer." *Frazee v. Seaview Toyota Pontiac, Inc.*, 695 F. Supp. 1406, 1408 (D. Conn. 1988).

Among other things, TILA

> requires that creditors in consumer credit transactions disclose the identity of the creditor, the amount financed, a statement of the consumer's right to obtain a written itemization of the amount financed, the finance charge, the APR, the total payments and the number, amount, and due dates or period of payments scheduled to repay the total payments.

*James v. Lopez Motors, LLC*, No. 3:16-cv-835 (VLB), 2018 WL 1582552, at *3 (D. Conn. Mar. 31, 2018) (citing 15 U.S.C. § 1638(a)). "The 'amount financed' is computed by 'tak[ing] the principal amount of the loan or the cash price less down payment and trade-in; [ ] add[ing] any charges which are not part of the finance charge or of the principal amount of the loan and which are financed by the consumer, including the cost of any items excluded from the finance charge pursuant to section 1605 of [the TILA]; and [ ] subtract[ing] any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit.'" *Hernandez v. Saybrook Buick GMC, Inc.*, 505 F. Supp. 3d 93, 103 (D. Conn. 2020) (quoting 15 U.S.C. § 1638(a)(2)(A)). "[T]he computations need not be disclosed." *Id*.

Mr. Tucker alleges that Executive Auto violated subsections (a)(3) and (4) of TILA by failing to accurately itemize the amount financed and by failing to accurately disclose the annual percentage rate ("APR"). Mem. at 12.

The Court agrees.

Tucker has sufficiently alleged that the price of the cash price of the car was increased from $6,500 to $8,900 as a condition of financing. Compl. ¶¶ 45–46; *see also Pechinski v. Astoria Federal Savings and Loan Ass'n*, 345 F.3d 78, 80 (2d Cir. 2003) ("In order to be considered a finance charge, a charge must be incident to, or a condition of, the extension of credit."). Thus, Executive Auto's listing of the increase as part of the amount financed rather than itemizing it with the finance charge constitutes a violation of TILA. *See Joseph v. Excellence Auto Trade LLC*, No. 16-CV-1534 (FB) (LB), 2017 WL 1157178, at *4 (E.D.N.Y. Feb. 10, 2017), *report and recommendation adopted*, No. 16-CV-1534 (FB) (LB), 2017 WL 1154999 (E.D.N.Y. Mar. 27, 2017) (determining that a motion for default judgment on a TILA claim should be granted where the plaintiff sufficiently alleged that an increase in price was "directly attributable to a finance charge" and was not disclosed as such). Additionally, the resulting 64.82% APR from accurately calculating the amount financed is greater than the 18.90% APR that Executive Auto disclosed on the retail installment contract, which is also a violation of TILA. *See Chesney v. Prestige Motor Sales, Inc.*, No. 15-CV-6369 (MKB) (LB), 2017 WL 11806232, at *3 (E.D.N.Y. Feb. 8, 2017), *report and recommendation adopted*, No. 15CV6369MKBLB, 2017 WL 11806233 (E.D.N.Y. May 8, 2017) ("Under TILA a creditor, like [the defendant], is obligated to disclose an accurate APR which must be determined in accordance with the Regulation Z Annual Percentage Rate Tables or as set forth in Appendix J. 12 CFR § 226.22(b)."). As a result, the Court finds that Mr. Tucker has established Executive Auto's liability under TILA.

Turning to damages, under TILA, Mr. Tucker is entitled to recover twice the amount of the finance charge up to $2,000. 15 U.S.C. § 1640(a)(2)(A)(ii). The finance charge, both actual and as listed, exceeds $2,000 when doubled, entitling Mr. Tucker to receive the statutory cap.

Mr. Tucker is also entitled to recover attorney's fees under TILA. "Under 15 U.S.C. § 1640, a prevailing plaintiff in a TILA action can recover reasonable costs and attorney's fees as determined by the Court." *King v. Paradise Auto Sales I, Inc.*, No. 15-CV-1188 (WFK) (RML), 2016 WL 4597477, at * 1 (E.D.N.Y. Aug. 16, 2016) *report and recommendation adopted*, 2016 WL 4595991 (E.D.N.Y. Sept. 2, 2016).

To determine attorney's fees, "a district court should consider the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 193 (2d Cir. 2008).

To determine a "reasonable" hourly rate, this Court should consider factors including, but not limited to, the following:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id*. at 184. This Court should also consider the prevailing market rates charged in the district where the plaintiff brought the case. *Id*. at 190.

Mr. Tucker seeks attorney's fees for work performed by three attorneys, one paralegal, and two legal assistants totaling $18,750. Blinn Decl. ¶ 13. He requests $500 per hour for Daniel Blinn, Esq.; $375 per hour for Christian Mines, Esq.; $300 per hour for Paulette N. Eze; $200 per hour for Lori Miner; $125 per hour for Nicole Reynolds; and $110 for Dora Fernandez. *Id*.

After reviewing the parties' submissions, including itemized charges and a declaration submitted by Mr. Tucker's lead attorney, Mr. Blinn, the Court finds the rates sought by Mr. Tucker's attorneys and the amount of time spent to be reasonable.

Further, Mr. Blinn represents that he has written off 8.1 hours of excessive or improperly billed time. Blinn Decl. ¶ 20. Having found the hourly rates and hours expended to be reasonable, the Court will not further reduce the award sought.

Accordingly, the Court will award Plaintiff $2,000 in statutory damages and $18,750 in attorney's fees under TILA.

### B. Retail Installment Sales Finance Act Claim

"RISFA sets forth the conditions governing retail installment sales contracts under Connecticut law in Conn. Gen. Stat. § 36a-771." *James v. Lopez Motors, LLC*, 3:16-CV-835 (VLB), 2018 WL 1582552, at *4 (D. Conn. 2018). Section 36a-771(a) provides:

> Every retail installment contract shall be in writing, shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer. No installment contract shall be signed by the retail buyer when such contract contains blank spaces to be filled in except that this provision shall not apply to serial number or other identifying marks which are not available for description at the time of execution of such contract. The retail seller shall deliver to the retail buyer a true and complete executed copy of the retail installment contract at the time the retail buyer signs such contract.

Conn. Gen. Stat. § 36a-771(a). Section § 36a-771(b) provides: "Every retail installment contract for the purchase of consumer goods subject to section 36a-774 and this section shall set forth the

10

information required to be disclosed under sections 36a-675 to 36a-686, inclusive, and the regulations thereunder, using the form, content and terminology provided therein." Conn. Gen. Stat. § 36a-771(b).

Mr. Tucker argues that Executive Auto violated RISFA in (1) violating TILA; (2) failing to provide him a fully executed copy of the contract at the time he executed it; and (3) charging an APR higher than 19%. Mem. at 13.

The Court agrees.

First, having sufficiently alleged that Executive Auto failed to accurately disclose the finance charge and the APR, thus violating TILA, Mr. Tucker has also established that Executive Auto violated RISFA. *See Sterling v. Farran & Ezedine, LLC*, No. 3:10-CV-1119 (WWE), 2011 WL 219697, at *3 (D. Conn. Jan. 20, 2011) ("A violation of TILA also constitutes a violation of RISFA.").

Second, taking the allegations in the Complaint as true, Mr. Tucker did not receive an executed copy of the retail installment contract at the time it was executed in further violation of RISFA. Conn. Gen. Stat. § 36a-771(a); Am. Compl. ¶ 51.

Third, as discussed, the resulting APR after treating the increase in price as a finance charge was 64.82%, greater than both the disclosed rate and the 19% APR allowable under Conn. Gen. Stat. § 36a-772(a)(3)(C). As a result, Mr. Tucker has established Executive Auto's liability under RISFA.

Accordingly, the Court will grant default judgment on Mr. Tucker's RISFA claim.

Turning to remedies available under RISFA, "in *Keyes v. Brown*, 155 Conn. 469[, 475] (1967), the Connecticut Supreme Court concluded that the statute implicitly provides for a right of rescission if a 'retail installment contract . . . is not completed in conformity' with RISFA's

11

mandates." *Conley v. 1008 Bank St., LLC*, No. 3:20-CV-284 (CSH), 2020 WL 4926599, at *12 (D. Conn. Aug. 22, 2020). "However, '[a]s a condition precedent to a rescission, the plaintiffs [are] required to allege and prove that they had restored or offered to restore [the defendant] to its former condition as nearly as possible.'" *Id*. at *12 (citing *Keyes*, 155 Conn. at 476) (alterations in original).

Here, Mr. Tucker has alleged—and the Court accepts as true—that he has given Executive Auto the opportunity to retrieve the vehicle and it has refused to do so. Am. Compl. ¶¶ 39–42. Thus, Mr. Tucker has established that he "offered to restore" Executive Auto to its former condition and is entitled to a rescission of the contract.

Courts in this District have treated a contract rescission under RISFA as analogous to the revocation of acceptance permitted by the Uniform Commercial Code (the "UCC"). *See Conley v. 1008 Bank St., LLC*, No. 3:20-cv-284 (CSH), 2022 WL 2287597, at *2 (Feb. 18, 2022) ("As Plaintiff asserts in his 'Supplemental Brief' [Doc. 13], the court in *Barco* recognizes that an 'RISFA rescission is the financial analogue of the UCC's revocation of acceptance for physical or mechanical non-conformity.'"); *see also Barco Auto Leasing Corp. v. House*, 520 A.2d 162, 169 (Conn. 1987) ("[W]e conclude that RISFA must be construed to afford to buyers like the defendants, who were injured by the plaintiff's failure to comply with the requirements of RISFA, no less protection than the UCC provides for buyers who are injured by a seller's delivery of defective goods.").

"The UCC authorizes a buyer of goods who rightfully rejects or justifiably revokes acceptance, because of the seller's breach, to recover so much of the price as has been paid." *Barco Auto Leasing Corp.*, 520 A.2d at 166 (internal quotation marks omitted). Revocation also allows for "the sale of goods after revocation of acceptance by the buyer if the seller refuses to

retake possession." *Conley*, 2022 WL 2287597, at *2 (citing *Keeler v. Gen. Prod.*, 137 Conn. 247, 249–50 (1950)). As Mr. Tucker has alleged that Executive Auto has refused to retrieve the vehicle, *see* Am. Compl. ¶ 39, the Court will grant him the revocation requested.

"'Upon justifiable revocation, a buyer is entitled to the same remedies as if the goods were rejected initially.' 'This includes recovery of the amount paid for the goods, as well as incidental damages.'" *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 181 (D. Conn. 2020) (citations omitted). Incidental damages include any "reasonable expense incident to the defendant's breach." *Hassett v. Secor's Auto Ctr., Inc.*, 284 A.3d 31, 35 (Conn. App. 2022).

Mr. Tucker paid $6,500 for the vehicle at issue. Pl.'s Aff., Ex. C. Additionally, Mr. Tucker testified at the hearing on his motion for default judgment that he also incurred incidental damages from having an unregistered vehicle and no means to purchase another. Minute Entry ECF No. 25. Mr. Tucker testified that, without a vehicle, he incurred costs of $500 per month for grocery and meal delivery services, ride share services, and public transportation for eleven months, totaling $5,500. Mr. Tucker also testified that he was required to move the unregistered vehicle into storage and has incurred six months of storage fees at $115 per month, totaling $690. The total of the incidental damages Mr. Tucker testified to are $6,190. Although Mr. Tucker is entitled to $12,690 under RISFA, the Court considers this amount to also be Mr. Tucker's compensatory damages under CUTPA, as discussed below. Thus, the Court will not award this amount under RISFA[2] to avoid double recovery. *See Negron v. Patriot Auto Sales*, LLC, No.

---

[2] In awarding Mr. Tucker compensatory damages under CUTPA, he is in as good a position as if Defendants had fully performed, which is the purpose of remedies under the UCC. *Cf. Exp. Dev. Canada v. T. Keefe & Son, LLC*, No. CV095032894S, 2016 WL 8488125, at *20 (Conn. Super. Ct. Nov. 9, 2016) ("[R]emedies under the Uniform Commercial Code are to be administered liberally so as to put the aggrieved party in as good a position as if the other party had fully performed."). Thus, the effect of revocation is still realized in awarding Mr. Tucker compensatory damages under CUTPA.

13

3:17-CV-00583 (JCH), 2019 WL 13215535, at *8 (D. Conn. Jan. 7, 2019) ("This rule, which is . . . known among Connecticut courts as 'the rule precluding double recovery,' is 'a simple and time-honored maxim that a plaintiff may be compensated only once for his just damages for the same injury.'" (citing *Mahon v. B.V. Unitron Mfg., Inc.*, 935 A.2d 1004, 1015 (Conn. 2007))).

Accordingly, the Court will not award Mr. Tucker damages under RISFA, however, the Court will allow Mr. Tucker to dispose of the vehicle and apply the proceeds in partial satisfaction of the judgment.

### C. Connecticut Unfair Trade Practices Act Claim

To establish a CUTPA violation, a plaintiff must show that the defendant "engage[d] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). Courts consider the following factors when evaluating whether a practice is "unfair" under CUTPA:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Ulbrich v. Groth*, 78 A.3d 76, 137 (Conn. 2013) (Zarella, J., concurring in part and dissenting in part) (quoting *Federal Trade Commission v. Sperry & Hutchinson Co.*, 405 U.S. 233, 245 n.5 (1972).

Mr. Tucker's principal argument is that TILA and RISFA violations may serve to establish a CUTPA violation. Mem. at 17–19.

The Court agrees.

14

"A violation of TILA offends the public policy embodied in TILA, and several courts have thus held that a TILA violation constitutes a CUTPA violation." *Munoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789, at *3 (D. Conn. Nov. 12, 2020) (citing *Conley v. 1008 Bank Street, LLC*, 2020 WL 4926599, at *15). In violating TILA and RISFA, Executive Auto breached the public policy promoted by those statutes, and thus violated CUTPA. *See Tillquist v. Ford Motor Credit Co.*, 714 F. Supp. 607, 616 (D. Conn. 1989) ("[A] violation of the CUTPA may be established by showing a practice amounting to a breach of public policy. . . . A breach of public policy, in turn, may result [from] a violation of another statute."). As a result, Mr. Tucker has established Executive Auto's liability under CUTPA.

Mr. Tucker also argues that Mr. Kazme is personally liable for violations of CUTPA. Mem. at 23.

The Court agrees.

"In order for any individual liability to attach under CUTPA, someone must knowingly or recklessly engage in unfair or unscrupulous acts, as contemplated by the statute, in the conduct of a trade or business." *Joseph Gen. Contracting, Inc. v. Couto*, 119 A.3d 570, 588 (Conn. 2015). Mr. Tucker alleges that not only is Mr. Kazme the owner of Executive Auto, he also personally prepared the inaccurate disclosures on the retail installment contract and made false representations as to Mr. Tucker's "100% guaranteed approval." Am. Compl. ¶ 11–12, 19. Accepting this allegation as true, the Court finds that Mr. Kazme knowingly engaged in unfair conduct contemplated by CUTPA.

Accordingly, the Court will grant default judgment on Mr. Tucker's CUTPA claim against Executive Auto and Mr. Kazme.

Under CUTPA, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [the statute], may bring an action . . . to recover actual damages." Conn. Gen. Stat. § 42-110g. Actual damages in this context are the compensatory damages Mr. Tucker suffered. *See Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*, No. 3:10-CV-437 (VAB), 2015 WL 5708541, at *3 (D. Conn. Sept. 29, 2015) ("In a private action brought under CUTPA, '[a]ny person who suffers ascertainable loss of money or property [ ] as a result of the use' of an unfair trade practice is entitled to recover 'actual damages,' which are compensatory damages."); *see also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998) ("Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more." (quoting BLACK'S LAW DICTIONARY, Rev. 4th ed. 1968)). As discussed above, Mr. Tucker sustained a total of $12,690 in compensatory damages. *See Hernandez*, 460 F. Supp. 3d at 186 (awarding incidental damages as a part of compensatory damages under CUTPA).

Under CUTPA, Mr. Tucker may also recover punitive damages. *See* Conn. Gen. Stat. § 42-110g ("The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.").

"While the award of punitive damages is discretionary, courts frequently decline to award punitive damages where other statutes impose multiple damages." *James v. Lopez Motors, LLC*, No. 3:16-CV-835 (VLB), 2018 WL 1582552, at *6 (D. Conn. Mar. 31, 2018). But leaving Mr. Tucker with an unregistered vehicle without plates, while also refusing to refund any of the amount Mr. Tucker paid for the vehicle, warrants the imposition of punitive damages. *See Stevenson v. Riverside Motorcars LLC*, 3:21-CV-00320 (KAD), 2021 WL 5051667, at *5 (D.

16

Conn. Nov. 1, 2021) ("The evidence, therefore, reveals a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (citation and internal quotation marks omitted)). Because "punitive damages should bear a reasonable relationship to actual damages[,]" *Munoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789, at *4 (D. Conn. Nov. 12, 2020), the Court will award Mr. Tucker the amount of his actual and incidental damages as punitive damages. *See Hernandez*, 505 F. Supp. 3d at 114 (granting the plaintiff's motion for default judgment on her CUTPA claim and awarding punitive damages in the amount of actual damages).

Accordingly, the Court will award compensatory damages of $12,690 and punitive damages of $12,690 against both Defendants under CUTPA.

## IV.     CONCLUSION

For the foregoing reasons, the motion for default judgment is **GRANTED**, and the Court awards Mr. Tucker damages against Executive Auto in the amount of **$20,750**, including $2,000 in statutory damages and $18,750 in attorney's fees under TILA.

The Court further awards Mr. Tucker damages against Executive Auto and Ali Kazme in the amount of **$25,380** under CUTPA, including $12,690 in compensatory damages and $12,690 in punitive damages.

Consistent with this Order, Mr. Tucker's acceptance of the vehicle is revoked, and he may dispose of the vehicle and apply the proceeds in partial satisfaction of the judgment.

Following the entering of this judgment, the Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 5th day of January, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

Case 3:22-cv-00709-VAB   Document 27   Filed 01/05/24   Page 18 of 18